UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSEPH J. YEOMAN,

                Plaintiff,

v.

JON FRY, WILLIAM EMBREY, JOHN DOE, JOHN DOE 1, RACINE COUNTY ASSISTANT DISTRICT ATTORNEY ANTOINETTE L. RICH, and RACINE COUNTY,

                Defendants.

Case No. 23-CV-188-JPS

**ORDER**

Plaintiff Joseph Yeoman, an inmate confined at Redgranite Correctional Institution filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated. ECF No. 1. On April 24, 2023, the Court screened Plaintiff's complaint, found that it violated Federal Rule of Civil Procedure 8, and allowed him to file an amended complaint. ECF No. 9. On May 17, 2023, Plaintiff filed an amended complaint. ECF No. 10. This order screens Plaintiff's amended complaint.

**1.    FEDERAL SCREENING STANDARD**

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

2. **PLAINTIFF'S ALLEGATIONS**

On August 3, 2016, Plaintiff was a passenger in a vehicle in Racine County when an accident occurred. ECF No. 10 at 6. Another person was driving Plaintiff's vehicle at the time, a maroon 2002 Pontiac Montana Minivan, and it was struck from behind on a local highway. *Id.* The vehicle that struck the car was a blue Dodge Ram SUV of an unknown year. *Id.* The

driver of the vehicle that hit Plaintiff's car was a Caucasian male in his late forties and the passenger of that car was a Caucasian female in her mid-thirties. *Id.* The driver of Plaintiff's vehicle, Stephan Eary ("Eary"), was a Native American male in his early thirties. *Id.* The accident caused Plaintiff's vehicle to crash into the median at sixty miles per hour. *Id.* Plaintiff's vehicle was damaged and Eary pulled off the road at the closest exit for safety purposes. *Id.*

Eary pulled into a Kwik Trip gas station and parked Plaintiff's vehicle. *Id.* The other vehicle involved in the accident also pulled into the gas station. *Id.* Plaintiff stepped out of the vehicle and approached the man who struck his vehicle. *Id.* Plaintiff asked if the man was alright and then asked if he had a license and insurance. *Id.* The man replied that the vehicle did not belong to him and that he did not have a driver's license. *Id.* at 6–7. Plaintiff then walked into the gas station and asked the clerk to call the police. *Id.* Plaintiff returned to his vehicle, and Eary had fled the scene. *Id.* at 7. Plaintiff approached his vehicle and saw that Eary had left the keys on the passenger seat. *Id.* Plaintiff retrieved the keys, shut and locked the doors to the vehicle, and waited outside for the police to arrive. *Id.*

As the driver who struck Plaintiff's vehicle existed the gas station, a Racine County Sheriff squad car pulled into the parking lot. *Id.* Defendant Racine County Sheriff Fry ("Fry") stepped out of the vehicle and proceeded to walk between Plaintiff and the other driver. *Id.* Fry asked if the van belonged to Plaintiff, who responded affirmatively. *Id.* Plaintiff then pointed to the other driver and said, "That is the man who hit me." *Id.* Absent any investigation or warning, Fry grabbed Plaintiff by the right arm and twisted it behind his back. *Id.* Seconds later, Fry threw Plaintiff to the ground, causing severe pain to his face and head. *Id.* Fry punched and

Page 3 of 17
Case 2:23-cv-00188-JPS   Filed 02/12/24   Page 3 of 17   Document 15

elbowed Plaintiff in the head over thirty times while screaming profanity and racial slurs, such as "sand [N-word]" and "towel head." *Id.* While detaining Plaintiff, Fry spit on his head as he kneeled on Plaintiff's neck and restricted his breathing. *Id.* Plaintiff struggled to tell Fry that he could not breath. *Id.* While lying on his stomach, face-first on the ground and handcuffed, Fry continued to beat Plaintiff as a second sheriff showed up. *Id.* Defendant Deputy William Embrey ("Embrey") watched as Fry continued to assault Plaintiff. *Id.* at 8. For no reason, Embrey held a taser to Plaintiff's head a threatened to shoot, repeatedly yelling, "I will shoot you [N-word]." *Id.* Fry struck Plaintiff in the head several more times without cause. At no time did Plaintiff resist or struggle with either defendant. *Id.*

Fry and Embry performed a cursory search of Plaintiff. Fry obtained the keys to Plaintiff's vehicle, his wallet containing his driver's license, and a necklace. *Id.* No contraband was found on Plaintiff during the search. *Id.* Plaintiff was placed in the back of a squad car for over ninety minutes while law enforcement used the keys to unlock and illegally search and seize Plaintiff's legally parked vehicle. *Id.* Plaintiff's vehicle and its compartments were searched without his consent or a search warrant. *Id.* The person who hit Plaintiff's vehicle was allowed to leave the parking lot and, to this day, no one knows the man's identity. *Id.* This fact is documented in circuit court records and police reports. *Id.*

On August 4, 2016, somewhere between the hours of 2:00 a.m. and 4:00 a.m., Fry transported Plaintiff to the hospital. *Id.* Plaintiff was forced to submit to a blood draw. *Id.* This incident took place hours after the warrantless search of Plaintiff's minivan. *Id.* After the blood draw, Fry aggressively beat Plaintiff in the hospital parking lot after he was placed in the back seat of the squad car and handcuffed. *Id.* Fry repeatedly struck

Plaintiff in the back of the head with a blunt object until he was unconscious. *Id.*

While still unconscious, Plaintiff was taken to Racine County Jail, cavity searched, fingerprinted, and left on the floor of the observation cell, still unconscious, for days. *Id.* Plaintiff was refused medical treatment for weeks after the incident. *Id.* Plaintiff's booking photo shows the bruising and cuts and that he was completely unconscious during the booking process. *Id.* at 8–9.

During the illegal search of Plaintiff's car, unknown Racine County law enforcement officials seized numerous items that went undocumented, and Plaintiff received no receipt. *Id.* at 9. These items included: Plaintiff's deceased grandmother's gold necklace, a platinum and diamond bracelet, a diamond faceted men's engagement ring, CDs and DVDs, two laptop computers, a video recorder, construction and other power tools, vacation photographs of Plaintiff's autistic child, personal documents, birth certificates, social security card, and other items of personal and highly confidential nature that could not reasonably be considered within the scope of the warrantless search. *Id.* The search occurred while Plaintiff was in the squad car on scene. *Id.* Approximately seven to ten sheriff deputies participated in the warrantless search. *Id.* No audio or video of the search exists. *Id.* There were numerous discrepancies in the submitted police affidavits, including mischaracterizations, exaggerations, omissions, and fabrications that could not have been unintentional. *Id.*

Fry falsified police reports and wrongfully issued Plaintiff several citations, including a DUI as a cover charge with the intent to disguise their own misconduct. *Id.* The record is completely devoid of any criminal activity, no indicia of impairment or a field sobriety test, and Plaintiff was

never witnessed driving the vehicle. *Id.* Plaintiff was located outside the vehicle when police arrived on scene. *Id.*

Days before Plaintiff's evidentiary hearing on November 14, 2016, Fry visited Plaintiff in Racine County Jail at approximately 3:00-4:00 a.m. to deliver Plaintiff's blood draw test results in person. *Id.* at 10. Fry attempted to intimidate Plaintiff with verbal threats of further isolation in segregation confinement and physical abuse. *Id.* During the hearing, the officers revealed that Plaintiff had the option of denying consent and could have declined to have the vehicle transported with him. *Id.* There is nothing in the record, however, that the officers asked for consent to search Plaintiff's vehicle or what would have happened to the vehicle after Plaintiff was placed in the squad car. *Id.* Plaintiff provides that his vehicle could have remained parked at the gas station or that it could have been towed to his home instead of searched. *Id.*

Plaintiff maintains that he was the victim of the car accident and was a passenger in the vehicle during the accident. *Id.* Fry and Embrey claimed they were investigating a "hit and run," but neither investigated the scene of the incident and they allowed the person who caused the accident to get away. *Id.* Both Fry and Embrey committed perjury by presenting false testimony on November 14, 2016, in violation of Wisconsin law. *Id.*

Defendant ADA Antoinette Rich ("Rich") committed malicious prosecution for knowingly presenting false police reports and false evidence from Fry and Embrey. *Id.* at 11. Rich instituted criminal proceedings against Plaintiff for an improper purpose and without probable cause. *Id.* From August 3, 2016 until December 10, 2021, Plaintiff spent five years litigating and 245 days of wrongful incarceration that Rich failed to take into account. *Id.* Plaintiff was charged under false pretenses

and police misconduct led to the illegal search of Plaintiff's vehicle and wrongful incarceration. *Id.*

Rich filed a criminal complaint against Plaintiff on August 5, 2016. *Id.* at 12. Plaintiff was wrongfully incarcerated and denied affordable bail until April 17, 2017. Circuit Court Judge Emily S. Mueller abused her discretion on January 12, 2017, and failed to protect Plaintiff's rights. Plaintiff filed a collateral estoppel motion on August 16, 2021. *Id.* Plaintiff filed a motion to suppress all evidence on June 25, 201, and an affidavit in support of a motion to reconsider on June 18, 2021. *Id.* Plaintiff's motion was set to be heard on December 10, 2021. *Id.* Moments before the hearing, Rich filed a motion of dismissal/acquittal and informed the trial court and Plaintiff's attorney that the State had no evidence against him. *Id.* Plaintiff suffered irreparable harm and extensive injury to his reputation based on Rich's false charges. *Id.*

Approximately two weeks after Plaintiff's arrest, two unknown officers in the Racine County Sheriff's Office encouraged Eary to provide a false statement implicating Plaintiff as the driver of the vehicle. *Id.* at 13. The officers forced Eary to do so under the threat of criminal charges. *Id.* at 14. This coerced information allowed Rich to continue the malicious prosecution of Plaintiff. *Id.* Rich was aware that evidence later found on Eary's person linked him to the evidence allegedly found in Plaintiff's glove compartment. *Id.* Eary was arrested after attempting to flee the scene of the gas station. *Id.* Racine County Jail officers found a knife and a bullet in his pocket. *Id.* This material issue of fact was suppressed exculpatory evidence in violation of Plaintiff's constitutional rights. *Id.* Plaintiff met Eary less than twenty-four hours prior to the car accident. *Id.* Plaintiff was in the process of moving at the time and was allowing Eary to drive a mutual friend,

Gregory Thompson ("Thompson"), a ride to work in Chicago. *Id.* Thompson is a material witness that Eary was driving the minivan that day. *Id.*

**3. ANALYSIS**

First, Plaintiff may proceed on a Fourth Amendment excessive force claim against Defendant Fry. "[A]ll claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The reasonableness inquiry is an objective one, examining 'whether the officer's actions are objectively reasonable in light of the totality of the facts and circumstances confronting him or her, without regard for consideration of the officer's subjective intent or motivations." *Payne v. Stacy*, Case No. 18-CV-850, 2020 WL 886185, at *3 (E.D. Wis. Feb. 24, 2020), *appeal dismissed*, Case No. 20-1509, 2020 WL 5793102 (7th Cir. June 12, 2020) (citations omitted). The actions taken by an officer "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citations omitted).

Plaintiff claims that Fry used unnecessary force when he slammed him to the ground and repeatedly struck him during his arrest. Plaintiff also claims that Fry later used excessive force in the hospital parking lot. At the pleading stage, the Court finds Plaintiff's allegations sufficient to proceed on a Fourth Amendment excessive force claim against Defendant Fry for his conduct during the arrest and afterwards in the hospital parking lot.

Second, Plaintiff also alleges state law assault and battery claims against Fry. In Wisconsin, a battery, or assault and battery, is a common law tort, defined as an intentional contact with another that is unpermitted.

*Estate of Thurman v. City of Milwaukee*, 197 F. Supp. 2d 1141, 1151–52 (E.D. Wis. 2002) (citing *McCluskey v. Steinhorst*, 45 Wis. 2d 350, 357 (1970)). At this early stage, the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a) and will allow Plaintiff to proceed on a state law claim of assault and battery against Fry.

Third, Plaintiff may proceed against Defendant Embrey for failing to intervene against Fry's use of excessive force. An officer can be held liable under the Constitution for failing to stop the use of force by another officer if the first officer had: (1) reason to know that a fellow officer was using excessive force or committing another constitutional violation; and (2) a realistic opportunity to intervene to prevent the act from occurring. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). Plaintiff alleges that Embrey stood by and watched while Fry assaulted Plaintiff. At the pleading stage, Plaintiff's allegations are sufficient to state a Fourth Amendment claim against Embrey for his failure to intervene against Fry's excessive use of force.

Fourth, Plaintiff may proceed on a Fourth Amendment claim against Fry, Embrey, and the Doe defendants for the illegal search of his car. "Warrantless searches are *per se* unreasonable under the Fourth Amendment, unless an exception applies." *United States v. Smith*, 989 F.3d 575, 581 (7th Cir. 2021). However, warrantless searches are constitutionally permissible "under certain narrowly proscribed exceptions." *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010). Here, Plaintiff alleges that his car was searched without a warrant and that no exceptions to the warrant requirement applied. As such, at the early pleading stage, the Court will allow Plaintiff to proceed against Fry, Embrey, and the Doe defendants for the illegal search of his car.

Fifth, Plaintiff may proceed on a Fourth Amendment claim against Fry and Embrey for arresting him without probable cause. The Fourth Amendment guarantees the right of the people "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" and provides that "no warrants shall issue but upon probable cause...." U.S. Const. amend. IV. Probable cause is an absolute defense to a § 1983 claim for wrongful arrest. *See Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014). A police officer has probable cause to arrest if, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to permit a prudent person to believe that the suspect had committed, is committing, or is about to commit an offense. *Id.* "When an officer has received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, ... he has probable cause." *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (internal quotation marks and citation omitted).

Plaintiff has sufficiently stated a claim at the pleading stage for false arrest. Plaintiff alleges that he was the victim of a crime and called the police for help. Upon arrival, however, they disbelieved everything he said and arrested him, for no apparent reason, and allowed the person who hit his vehicle to leave free. Given these facts, the Court finds that Plaintiff may proceed on a Fourth Amendment false arrest claim against Fry and Embrey. The Court notes that it is unclear if any Doe defendants were involved in Plaintiff's arrest; Plaintiff may clarify this claim through amendment if and when he later identifies the Doe defendants.

Sixth, in relation to his false arrest, the Plaintiff also brings a Wisconsin state-claim for malicious prosecution. At this early stage, the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a).

Establishing malicious prosecution requires proof of six elements: (1) there must have been a prior institution or continuation of some regular judicial proceedings against the plaintiff in this action for malicious prosecution; (2) such former proceedings must have been by, or at the instance of, the defendant in this action for malicious prosecution; (3) the former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution; (4) there must have been malice in instituting the former proceedings; (5) there must have been want of probable cause for the institution of the former proceedings; and (6) there must have been injury or damage resulting to the plaintiff from the former proceedings. *Wisconsin Pub. Serv. Corp. v. Andrews*, 2009 WI App 30, ¶ 23, 766 N.W.2d 232, 238. Here, Plaintiff alleges that Fry and Embrey lacked probable cause to arrest him, knowingly submitted false police reports, that the State later dismissed those charges due to a lack of evidence, and that he suffered significant injury as a result. At the pleading stage, the Court therefore finds that Plaintiff may proceed against Fry and Embrey for a Wisconsin state-law malicious prosecution claim.

Sixth, the Court finds that Plaintiff may not proceed against Defendant Rich. "A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) ("*Fields I*"). However, where a prosecutor is acting not as a legal advocate but as an investigator, he is entitled only to the qualified immunity that would be granted to police officers carrying out those same duties. *Id.* at 511. Courts distinguish these two roles by looking to the function of the action undertaken. An action is prosecutorial if "the prosecutor is, at the time, acting as an officer of the court" and the action itself is "related[ ] to the

judicial phase of the criminal process." *Id.* at 510; *see also id.* at 513 (finding that "[o]nce a defendant is indicted" and the prosecutor begins working towards trial, prosecutorial immunity attaches to his actions). In contrast, "[p]rosecutors do not function as advocates before probable cause to arrest a suspect exists," so any action undertaken during a preliminary investigation is not prosecutorial. *Id.* at 512. Prosecutorial immunity attaches to the failure to comply with disclosure obligations and the suppression of evidence, *id.* at 513, the initiation of a criminal prosecution, *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), the evaluation and preparation of evidence collected by the police for presentation at trial, *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), and court appearances to obtain search warrants, *Burns v. Reed*, 500 U.S. 478, 491 (1991). The immunity applies even when the prosecutorial action was done maliciously or unreasonably. *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). However, "[a] prosecutor cannot retroactively immunize himself from conduct by perfecting his wrong-doing through introducing the fabricated evidence at trial;" he is still liable for actions taken while in an investigatory role. *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) (*Fields II*).

Here, Plaintiff's allegations against Rich involve her decision to charge him and knowledge of the officers' false allegations. These actions are in the category of prosecutorial duties as opposed to investigation, and, as such, Rich is absolutely immune from suit on these claims. The Court will dismiss Rich from this action.

Seventh, the Court will dismiss Defendant Racine County because Plaintiff fails to state a claim against it. Section 1983 grants a private right of action against a "person" who acts under color of state law to deprive another of rights under federal law, including the Constitution. A key part

of § 1983's doctrinal structure is the difference between individual and governmental liability. In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978), the United States Supreme Court found that a plaintiff may proceed against a municipal government so long as a constitutional violation was caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. 436 U.S. at 690–91; *Glisson v. Ind. Dep't of Correction*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc).

Here, Plaintiff does not allege any facts against Racine County to state a *Monell* claim. He makes no mention of the failure to train or any unconstitutional policy, customs, or practice. As such, the Court will dismiss Racine County from this action.

Finally, the Court will not allow Plaintiff to proceed on his claims against Racine County Jail officials for the alleged inadequate medical treatment and their treatment of him once incarcerated. While multiple claims against a single party are fine, a plaintiff cannot bring unrelated claims against different defendants in the same case. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); *George*, 507 F.3d at 607; *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions").

Page 13 of 17
Case 2:23-cv-00188-JPS   Filed 02/12/24   Page 13 of 17   Document 15

Plaintiff alleges claims related to the following two issues: (1) his arrest and subsequent prosecution; and (2) his treatment by other unknown officials at the jail. As far as the Court can tell, none of the defendants overlap these two issues., As such, the Court finds that Plaintiff's complaint violates Rules 18 and 20 because he seeks to bring unrelated claims against unrelated defendants. When a plaintiff has improperly joined unrelated claims against unrelated defendants, the court must reject the complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21).

Here, Plaintiff has already amended his complaint and the Court finds that the best course of action is that Plaintiff may not proceed in the present case on the unrelated claims of improper treatment at the Racine County Jail. These claims do not involve the same defendants, law, or facts, and therefore belong in a separate case. Plaintiff may choose to bring these claims in a different case if he so chooses.

4. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Fourth Amendment excessive force claim against Fry.

**Claim Two:** Wisconsin state law assault and battery claim against Fry.

**Claim Three**: Fourth Amendment failure to intervene claim against Embrey.

**Claim Four:** Fourth Amendment illegal search of Plaintiff's vehicle against Fry, Embrey, and the Doe defendants.

**Claim Five:** Fourth Amendment false arrest claim against Fry and Embrey.

**Claim Six:** Wisconsin state-law claim for malicious prosecution against Fry and Embrey.

Accordingly,

**IT IS ORDERED** that Defendants Racine County and Rich be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the amended complaint and this order upon **Fry and Embrey** pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that Defendants file a responsive pleading;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the amended complaint, and Plaintiff should strongly consider filing a second amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave

to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 12th day of February, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.