# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOSEPH J. YEOMAN,

              Plaintiff,

v.

JON FRY, WILLIAM EMBREY, JOHN DOE, JOHN DOE 1, RACINE COUNTY, RACINE COUNTY SHERIFF'S OFFICE, TOWNSHIP OF YORKVILLE, and CHRISTOPHER SCHMALING,

              Defendants.

Case No. 23-CV-188-JPS

**ORDER**

Plaintiff Joseph Yeoman, an inmate confined at Redgranite Correctional Institution filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated. ECF No. 1. On February 12, 2024, the Court screened Plaintiff's amended complaint and allowed him to proceed on various claims. ECF No. 15. On September 26, 2024, the Court granted Plaintiff leave to file an amended complaint. ECF No. 46. Following an extension of time, Plaintiff filed a second amended complaint on November 19, 2024. ECF No. 50. The Court will accordingly deny as moot Plaintiff's second motion for an extension of time to file an amended complaint, ECF No. 49. This order screens the second amended complaint.

1.     **FEDERAL SCREENING STANDARD**

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## 2. PLAINTIFF'S ALLEGATIONS

On August 3, 2016, Plaintiff was a passenger in a vehicle in Racine County, in the town of Yorkville, when an accident occurred. ECF No. 50 at 7. Another person was driving Plaintiff's vehicle at the time, a maroon 2002 Pontiac Montana Minivan, and it was struck from behind on a local highway. *Id.* The vehicle that struck the car was a blue Dodge Ram SUV of an unknown year. *Id.* The driver of the vehicle that hit Plaintiff's car was a Caucasian male in his late forties and the passenger of that car was a Caucasian female in her mid-thirties. *Id.* The driver of Plaintiff's vehicle, Stephan Eary ("Eary"), was a Native American male in his early thirties. *Id.* The accident caused Plaintiff's vehicle to crash into the median at sixty miles per hour. *Id.* Plaintiff's vehicle was damaged and Eary pulled off the road at the closest exit for safety purposes. *Id.*

Eary pulled into a Kwik Trip gas station and parked Plaintiff's vehicle. *Id.* The other vehicle involved in the accident also pulled into the gas station. *Id.* Plaintiff stepped out of the vehicle and approached the man who struck his vehicle. *Id.* Plaintiff asked if the man was alright and then asked if he had a license and insurance. *Id.* The man replied that the vehicle did not belong to him and that he did not have a driver's license. *Id.* Plaintiff then walked into the gas station and asked the clerk to call the police. *Id.* Plaintiff returned to his vehicle, and Eary had fled the scene. *Id.* Plaintiff approached his vehicle and saw that Eary had left the keys on the passenger seat. *Id.* Plaintiff retrieved the keys, shut and locked the doors to the vehicle, and waited outside for the police to arrive. *Id.*

As the driver who struck Plaintiff's vehicle exited the gas station, a Racine County Sheriff squad car pulled into the parking lot. *Id.* Defendant Racine County Sheriff Jon Fry ("Fry") stepped out of the vehicle and

proceeded to walk between Plaintiff and the other driver. *Id.* Fry asked if the van belonged to Plaintiff, who responded affirmatively. *Id.* Plaintiff then pointed to the other driver and said, "That is the man who hit me." *Id.* Absent any investigation or warning, Fry grabbed Plaintiff by the right arm and twisted it behind his back. *Id.* at 8. Seconds later, Fry threw Plaintiff to the ground, causing severe pain to his face and head. *Id.* Fry punched and elbowed Plaintiff in the head over thirty times while screaming profanity and racial slurs, such as "sand [N-word]" and "towel head." *Id.* While detaining Plaintiff, Fry spit on his head as he kneeled on Plaintiff's neck and restricted his breathing. *Id.* Plaintiff struggled to tell Fry that he could not breath. *Id.* While lying on his stomach, face-first on the ground and handcuffed, Fry continued to beat Plaintiff as a second sheriff showed up. *Id.* Defendant Deputy William Embrey ("Embrey") watched as Fry continued to assault Plaintiff. *Id.* at 8. For no reason, Embrey held a taser to Plaintiff's head and threatened to shoot, repeatedly yelling, "I will shoot you [N-word]." *Id.* Fry struck Plaintiff in the head several more times without cause. At no time did Plaintiff resist or struggle with either defendant. *Id.*

Fry and Embry performed a cursory search of Plaintiff. Fry obtained the keys to Plaintiff's vehicle, his wallet containing his driver's license, and a necklace. *Id.* No contraband was found on Plaintiff during the search. *Id.* Plaintiff was placed in the back of a squad car for over ninety minutes while law enforcement used the keys to unlock and illegally search and seize Plaintiff's legally parked vehicle. *Id.* Plaintiff's vehicle and its compartments were searched without his consent or a search warrant. *Id.* The person who hit Plaintiff's vehicle was allowed to leave the parking lot

and, to this day, no one knows the man's identity. *Id.* This fact is documented in circuit court records and police reports. *Id.*

On August 4, 2016, somewhere between the hours of 2:00 a.m. and 4:00 a.m., Fry transported Plaintiff to the hospital. *Id.* Plaintiff was forced to submit to a blood draw. *Id.* This incident took place hours after the warrantless search of Plaintiff's minivan. *Id.* After the blood draw, Fry aggressively beat Plaintiff in the hospital parking lot after he was placed in the back seat of the squad car and handcuffed. *Id.* Fry repeatedly struck Plaintiff in the back of the head with a blunt object until he was unconscious. *Id.*

While still unconscious, Plaintiff was taken to Racine County Jail, cavity searched, fingerprinted, and left on the floor of the observation cell, still unconscious, for days. *Id.* at 9. Plaintiff was refused medical treatment for weeks after the incident. *Id.* Plaintiff's booking photo shows the bruising and cuts and that he was completely unconscious during the booking process. *Id.*

During the illegal search of Plaintiff's car, unknown Racine County law enforcement officials seized numerous items that went undocumented, and Plaintiff received no receipt. *Id.* at 9. These items included: Plaintiff's deceased grandmother's gold necklace, a platinum and diamond bracelet, a diamond faceted men's engagement ring, CDs and DVDs, two laptop computers, a video recorder, construction and other power tools, vacation photographs of Plaintiff's autistic child, personal documents, birth certificates, social security card, and other items of personal and highly confidential nature that could not reasonably be considered within the scope of the warrantless search. *Id.* The search occurred while Plaintiff was in the squad car on scene. *Id.* Approximately seven to ten sheriff deputies

Page 5 of 14
Case 2:23-cv-00188-JPS   Filed 01/28/25   Page 5 of 14   Document 51

participated in the warrantless search. *Id.* No audio or video of the search exists. *Id.* There were numerous discrepancies in the submitted police affidavits, including mischaracterizations, exaggerations, omissions, and fabrications that could not have been unintentional. *Id.*

Fry falsified police reports and wrongfully issued Plaintiff several citations, including a DUI as a cover charge with the intent to disguise their own misconduct. *Id.* at 10. The record is completely devoid of any criminal activity, no indicia of impairment or a field sobriety test, and Plaintiff was never witnessed driving the vehicle. *Id.* Plaintiff was located outside the vehicle when police arrived on scene. *Id.*

Days before Plaintiff's evidentiary hearing on November 14, 2016, Fry visited Plaintiff in Racine County Jail at approximately 3:00-4:00 a.m. to deliver Plaintiff's blood draw test results in person. *Id.* Fry attempted to intimidate Plaintiff with verbal threats of further isolation in segregation confinement and physical abuse. *Id.* During the hearing, the officers revealed that Plaintiff had the option of denying consent and could have declined to have the vehicle transported with him. *Id.* There is nothing in the record, however, that the officers asked for consent to search Plaintiff's vehicle or what would have happened to the vehicle after Plaintiff was placed in the squad car. *Id.* Plaintiff provides that his vehicle could have remained parked at the gas station or that it could have been towed to his home instead of searched. *Id.* Despite no probable cause for the arrest and searches, the circuit court denied Plaintiff's motion to suppress on January 12, 2017. Plaintiff served 245-300 days of wrongful custody and was acquitted on December 10, 2021. *Id.* at 10–11.

Fry, Embrey, and approximately seven to ten Doe defendants seized him and illegally searched his vehicle. *Id.* at 11. Approximately two weeks

after Plaintiff's arrest, two unknown officers in the Racine County Sheriff's Office encouraged Eary to provide a false statement implicating Plaintiff as the driver of the vehicle. *Id.* The officers forced Eary to do so under the threat of criminal charges. *Id.* This coerced information allowed the DA's office to continue the malicious prosecution of Plaintiff. *Id.* All officers were aware that evidence found linked Eary to the illegally obtained evidence. *Id.* Eary was arrested after attempting to flee the scene of the gas station. *Id.* Racine County Jail officers found a knife and a bullet in his pocket. *Id.* This material issue of fact was suppressed exculpatory evidence in violation of Plaintiff's constitutional rights. *Id.* Plaintiff met Eary less than twenty-four hours prior to the car accident. *Id.* Plaintiff was in the process of moving at the time and was allowing Eary to drive a mutual friend, Gregory Thompson ("Thompson"), a ride to work in Chicago. *Id.* Thompson is a material witness that Eary was driving the minivan that day. *Id.*

Plaintiff alleges that Defendants Christopher Schmaling ("Schmaling") and Racine County Sheriff's Office ("RCSO") are liable for the harm he sustained. *Id.* at 13–14. These defendants knew or should have known that their employees were violent and disposed to maliciously prosecute members of the public. *Id.* at 14. The defendant officers became vicious and demonstrated an "ungovernable temper." As such, Schmaling and RCSO were negligent in the hiring and supervision of their officers. *Id.*

Plaintiff also alleges that the Township of Yorkville and Racine County have an illegal custom to pursue suspects by any means necessary to obtain a conviction. *Id.* at 16. These customs are the moving force behind the harms Plaintiff suffered. *Id.* Specifically, Plaintiff alleges the following illegal policies and practices: (1) a code of silence where officers refuse to report unconstitutional and criminal misconduct of other officers; (2) failure

to train, supervise and discipline officers in regards to unconstitutional and criminal misconduct; (3) the failure to adequately investigate and substantiate allegations of unconstitutional conduct; and (4) the failure to adequately discipline police officers that engage in unconstitutional and criminal misconduct. *Id.* at 17–18.

## 3. ANALYSIS[1]

First, the Court finds that Plaintiff may proceed on a Fourth Amendment malicious prosecution claim against Defendants Fry, Embrey, and Doe defendants. In *Manuel v. City of Joliet*, 580 U.S. 357 (2017), the Supreme Court clarified that "detention without probable cause violates the Fourth Amendment 'when it precedes, but also when it follows, the start of legal process in a criminal case.'" *Lewis v. City of Chicago*, 914 F.3d 472, 474 (7th Cir. 2019) (quoting *Manuel*, 580 U.S. at 358); *see also Kuri v. City of Chicago*, 990 F.3d 573, 575 (7th Cir. 2021) ("*Manuel* held that the Fourth Amendment supplies the basis for a [wrongful-detention] claim until the suspect is either convicted or acquitted."). More recently, the Supreme Court held in *Thompson v. Clark*, 596 U.S. 36 (2022), that a Fourth Amendment malicious prosecution claim "does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication

---

[1]The Court notes that it analyzes the claims that Plaintiff brings in the second amended complaint. Though there are factual allegations that suggest excessive force, false arrest, and illegal searches, it appears Plaintiff does not intend to proceed on those claims. The Court had previously allowed those claims to proceed after screening an earlier complaint. ECF No. 15. However, following a motion to dismiss, the Court instructed the parties to meet and confer regarding the filing of an amended complaint. ECF No. 46. In that order, the Court noted various claims were likely barred by the statute of limitations. *Id.* As such, the Court does not consider these claims in its analysis because Plaintiff clearly does not assert them in this instance. The Court sincerely appreciates the parties' efforts in working together to resolve these issues and to preserve judicial resources.

of innocence." *Id.* at 49. Instead, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id.* Following *Thompson*, the Seven Circuit considered a federal malicious prosecution claim in a case where the district court had previously analyzed it only under Wisconsin law. *See Evans v. Matson*, No. 23-2954, 2024 WL 2206638, at *2 (7th Cir. May 16, 2024). It clarified that a Fourth Amendment malicious prosecution claim arises if a criminal prosecution "(1) was instituted without probable cause; (2) for a "malicious" motive—a purpose other than bringing the defendant to justice; and (3) "ended without a conviction." *Id.* (citing *Thompson*, 596 U.S. at 44, 49.

Here, Plaintiff alleges that Fry, Embrey, and various Does lacked probable cause to arrest him, knowingly submitted false police reports, and fabricated evidence. Plaintiff further alleges that the State later dismissed those charges due to a lack of evidence and that he suffered significant injury as a result of the illegal pretrial detention. At the pleading stage, the Court finds that Plaintiff may proceed against Fry, Embrey, and Doe defendants for a Fourth Amendment malicious prosecution claim.

Second, Plaintiff also brings a Wisconsin state-claim for malicious prosecution. At this early stage, the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a). Establishing malicious prosecution under Wisconsin law requires proof of six elements: (1) there must have been a prior institution or continuation of some regular judicial proceedings against the plaintiff in this action for malicious prosecution; (2) such former proceedings must have been by, or at the instance of, the defendant in this action for malicious prosecution; (3) the former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution; (4) there must have been malice in instituting the

former proceedings; (5) there must have been want of probable cause for the institution of the former proceedings; and (6) there must have been injury or damage resulting to the plaintiff from the former proceedings. *Wisconsin Pub. Serv. Corp. v. Andrews*, 2009 WI App 30, ¶ 23, 766 N.W.2d 232, 238. Similar to its analysis for the federal claim, the Court finds that, at the pleading stage, Plaintiff may proceed against Fry, Embrey, and Doe defendants for a Wisconsin state-law malicious prosecution claim.

Third, the Court does not find that Plaintiff states a due process violation against any defendants for the fabrication of evidence. "Allegations of evidence fabrication may state a colorable due-process claim." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016). However, a claim for unlawful pretrial detention "rests *exclusively* on the Fourth Amendment," not the Fourteenth. *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) (emphasis in original); *see also DeLaRosa v. Village of Romeoville,* No. 23 CV 7049, 2024 WL 1579394, at *2 (N.D. Ill. Apr. 11, 2024) ("Because the plaintiff's unlawful pretrial detention and unlawful seizure claims fall squarely within the ambit of the Fourth Amendment, Counts XIII and XIV are dismissed."). "[U]nlike wrongful pretrial detention claims based on fabricated evidence, fabrication-based wrongful conviction claims implicate due process." *Id.* (citing *Lewis*, 914 F.3d at 479–80). Here, Plaintiff is already proceeding on a Fourth Amendment claim. Plaintiff does not, however, allege that he was convicted, and therefore a due process violation for the fabrication of evidence is therefore inapplicable.

Fourth the Court finds that Plaintiff may proceed on a *Monell* claim against Defendant Racine County. Section 1983 grants a private right of action against a "person" who acts under color of state law to deprive another of rights under federal law, including the Constitution. A key part

of § 1983's doctrinal structure is the difference between individual and governmental liability. In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978), the United States Supreme Court found that a plaintiff may proceed against a municipal government so long as a constitutional violation was caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. 436 U.S. at 690–91; *Glisson v. Ind. Dep't of Correction*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc).

Here, Plaintiff alleges that Racine County's customs and practices caused the harm of the unconstitutional actions of Racine County officers. Plaintiff alleges a number of specific unconstitutional customs and practices that caused his injuries. At the pleading stage, the Court finds Plaintiff's allegations are sufficient to proceed against Racine County for a *Monell* claim. The Court will not, however, allow Plaintiff to proceed against the Township of Yorkville. Plaintiff alleges that the officers involved in the constitutional violations are Racine County Employees. Plaintiff's arrest took place in Yorkville; however, the Court is unable to discern any factual allegations suggesting how Yorkville as a municipality caused the alleged constitutional violations. As such, the Court will dismiss the Township of Yorkville for the failure to state a claim against it. The Court will similarly dismiss Defendant RCSO because it is not a "person" for the purposes of § 1983 and therefore not a suable entity. *See Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("[T]he district court was correct that, in listing the Knox County Jail as the sole defendant, [Plaintiff] named a non-suable entity.").

Page 11 of 14
Case 2:23-cv-00188-JPS   Filed 01/28/25   Page 11 of 14   Document 51

Finally, the Court will allow Plaintiff to proceed on a state law negligent supervision claim against Schmaling. Negligent supervision is an actionable tort in Wisconsin where "the failure of the employer to exercise due care was a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury." *Miller v. Wal-Mart Stores, Inc.*, 580 N.W.2d 233, 238 (Wis. 1998). The few Wisconsin courts to consider the issue appear to find negligent supervision distinct from general negligence, and therefore not duplicative. *See Hansen v. Texas Roadhouse, Inc.*, 827 N.W.2d 99, 108 (Wis. Ct. App. 2012) (treating the two causes of action as distinct and holding that a jury's affirmance of punitive damages in a negligent supervision action did not imply a cause of action for general negligence, which was never submitted to the jury); *see also John Doe 1 v. Archdiocese of Milwaukee*, 734 N.W.2d 827, 837–38 (Wis. 2007) (holding that, for statute of limitations purposes, negligent supervision is a derivative claim arising from general negligence, but not foreclosing both). At the pleading stage, the Court will allow Plaintiff to proceed against Schmaling for negligent supervision.

4. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Fourth Amendment malicious prosecution claim against Fry, Embrey, and Doe defendants.

**Claim Two:** Wisconsin state-law claim for malicious prosecution against Fry, Embrey, and Doe defendants.

**Claim Three**: *Monell* claim against Racine County.

**Claim Four:** Negligent supervision state-law claim against Schmaling.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for an extension of time to file an amended complaint, ECF No. 49, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants Racine County Sheriff's Office and Township of Yorkville be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the second amended complaint, ECF No. 50, and this order upon Defendants **Schmaling and Racine County** pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that Defendants file a responsive pleading to the second amended complaint, ECF No. 50; and

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the second amended complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss.

Page 13 of 14
Case 2:23-cv-00188-JPS    Filed 01/28/25    Page 13 of 14    Document 51

Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 28th day of January, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge