UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSEPH J. YEOMAN,

        Plaintiff,

v.

JON FRY, WILLIAM EMBREY, JOHN DOE, JOHN DOE 1, RACINE COUNTY, RACINE COUNTY SHERIFF'S OFFICE, TOWNSHIP OF YORKVILLE, and
CHRISTOPHER SCHMALING,

        Defendants.

Case No. 23-CV-188-JPS

---

### DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION SUMMARY JUDGMENT

---

**NOW COME** Defendants Jon Fry, William Embrey, Racine County, Racine County Sheriff's Office, and Christopher Schmaling (collectively "Defendants"), by and through their attorneys, Meissner Tierney Fisher & Nichols, S.C., by Jacob A. Sosnay, as and for their Brief in Support of their Motion for Summary Judgment seeking this case be dismissed in its entirety, on the merits and with prejudice, set forth as follows:

### INTRODUCTION

This case arises from an August 3, 2016, car accident on northbound Interstate 94 ("I-94") in Racine County, south of the Highway 20 exit. More specifically, at or about 11:35 p.m. on August 3, 2016, Racine County 911 dispatch received two calls reporting a hit and run on northbound I-94 involving a red or maroon minivan that, after causing the accident, fled the scene and exited at Highway 20. In response to that call, multiple officers responded to investigate.

Part and parcel to that investigation, Defendant Sgt. Jon Fry responded to a Kwik Trip gas station located just east of the Highway 20 exit on I-94. In doing so, he discovered a red minivan that was heavily damaged on its front left side and otherwise matched the reported description of the vehicle that had fled the scene of the accident on I-94.

Outside of the vehicle was Plaintiff, Joseph Yeoman. Upon questioning, Plaintiff admitted the minivan was his. During his interactions with Sgt. Fry and the other officers who arrived on scene, Plaintiff acted agitated, erratic and repeatedly made nonsensical statements. Officers observed that he was wide-eyed, sweaty, and barefoot. Those observations led the Officers to suspect Plaintiff may have been the perpetrator of the hit-and-run and may have been under the influence of an illegal drug. Based on those observations Plaintiff was arrested and ultimately charged and prosecuted for a variety of different crimes related to the hit-and-run and ensuing events.

Subsequent to his arrest, Plaintiff challenged probable cause for his arrest and search of his vehicle. Plaintiff's motions in that regard were denied by the trial court. In addition, Plaintiff then jumped bail and was not brought before the Court again until after an arrest for an unrelated burglary at which time the prosecution related to the hit and run resumed. However, by the time the matter was scheduled for trial, for reasons unknown, the evidence upon which the Racine County District Attorney's office would need for its case had been lost. Accordingly, the District Attorney elected to dismiss the criminal charges against Plaintiff.

A few years later, Plaintiff filed this civil lawsuit. Most of Plaintiff's claims were barred by the applicable statute of limitations. However, this Court denied Defendants' motion to dismiss on procedural grounds. It permitted Plaintiff to amend his complaint and, after screening that amended complaint, the court permitted Plaintiff to proceed on the following claims: 1) Malicious Prosecution against Sgt. Fry, Deputy Embrey, John Doe 1, and John Doe 2 (federal); 2) Malicious

Prosecution (state); 3) *Monell* violations against Racine County; and 4) Negligent Supervision against Sheriff Schmaling.

Plaintiff's claims are meritless. First, Plaintiff cannot sustain the federal or state law claims for malicious prosecution. Malicious prosecution requires Plaintiff to demonstrate that the officers did not have probable cause to arrest him at the time of the alleged crime. As noted above, Plaintiff had an opportunity to do that before the criminal court and lost. He did not, thereafter, prosecute a successful appeal. Nevertheless, the undisputed facts demonstrate there was probable cause to arrest Plaintiff based on the reasonable suspicion that he was involved in a hit and run based upon:

- Separate 911 calls reported an erratically-driven red minivan struck another vehicle, fled the scene and exited at Highway 20;
- Officers responding to the call found a red minivan matching the description of the one reported in the 911 calls which had extensive damage indicating it was involved in a recent accident;
- Plaintiff was outside the vehicle and admitted it belonged to him.

Based on those facts alone, Defendants had probable cause to arrest Plaintiff. Beyond that, Plaintiff's demeanor, conduct, statements and appearance all suggested Plaintiff may not have just committed a hit and run, but that he had been operating under the influence of an intoxicant.

After the arrest, the only other involvement any Defendant in this action had concerning Plaintiff's case involved testifying at a suppression hearing prompted by Plaintiff's motion practice in the criminal matter. The Defendants had no further involvement in the prosecution which, by then, was in the hands of the District Attorney's office.

Plaintiff's malicious prosecution claims must be dismissed. Further, Plaintiff cannot maintain his *Monell* claim, or negligent supervision claim because he cannot produce any evidence to

3

support them. Accordingly, Defendants request that the Court grant its Motion for Summary Judgment, dismiss this lawsuit in its entirety, on the merits and with prejudice.

## STANDARD OF REVIEW

The summary judgment procedure is integral to the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted). Pursuant to Fed. R. Civ. P. 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex.* at 325. But "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the nonmoving party.*" Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010).

## ARGUMENT

I. **PLAINTIFF'S FEDERAL LAW MALICIOUS PROSECUTION CLAIM MUST BE DISMISSED BECAUSE THE OFFICERS HAD PROBABLE CAUSE TO ARREST HIM.**

   **A. The Facts of the Case Demonstrate the Officers Had Probable Cause to Arrest Plaintiff for the Hit-and-Run Accident.**

The Defendant officers had probable cause to arrest Plaintiff and therefore the malicious prosecution claim must be dismissed. To succeed in a federal claim for malicious prosecution, Plaintiff must prove each of the following:

   1) the prosecution was instated without probable cause;
   2) for a "malicious" motive—a purpose other than bringing the defendant to justice; and
   3) ended without a conviction.

*Thompson v. Clark*, 596 U.S. 36, 44, 142 S. Ct. 1332, 212 L. Ed. 2d 382 (2022).

4

Probable cause is based on the facts available to an officer at the time of the arrest and amounts to an assessment of the totality of the circumstances. *State v. Richardson,* 156 Wis. 2d 128, 148, 456 N.W.2d 830 (1990). At the time the arrest was made, the officer must have "facts and circumstances within his or her knowledge sufficient to warrant a reasonable person to concede that the defendant has committed . . . an offense." *Id.* For probable cause, the officer does not need to have evidence beyond a reasonable doubt or even evidence "that guilt is more likely than not. *Id*. at 148. Probable cause can exist for a traffic related crime even if the individual is not viewed by law enforcement driving the car. See *Petersen v. Pedersen,* 140 F.4th 421 (7th Cir. 2025)

In *Petersen v. Pedersen* Deputy Pedersen was dispatched to a car crash. *Petersen v. Pedersen,* 140 F.4th 421 (7th Cir. 2025). She arrived at the scene and saw an individual, later identified as Mark Petersen, standing outside the car and attempting to change one of the car's tires. *Id.* at 424. She saw that Mr. Petersen was "unsteady" on his feet. *Id.* The deputy approached Mr. Petersen and he "rushed" away while yelling at the deputy in a slurred voice. *Id.* Mr. Petersen kept insisting that his daughter had been driving the car, even though nearby bystanders said that he was driving the car. *Id.* The deputy then arrested Mr. Petersen for drunk driving. *Id.* After arrest, she performed a search of the vehicle and discovered marijuana. She then took him to the hospital where a blood draw revealed a BAC much over the legal limit. *Id.* at 425. Following his arrest, Mr. Petersen moved to suppress the evidence of his BAC test in the criminal action. He succeeded in the motion, and the court dismissed the case. *Id.* at 425.

Mr. Petersen then filed a § 1983 action claim alleging false arrest against the Deputy. Defendant moved for summary judgment, arguing that the Deputy had probable cause to arrest Plaintiff and therefore the false arrest claim failed. Specifically, there was circumstantial evidence to arrest Plaintiff based on the location of the car, the strong order of intoxicants, slurred speech, familiarity

5

with Plaintiff on prior occasions, and bystanders' observations. *Id.* at 427. The Eastern District of Wisconsin granted summary judgment in favor of the Defendant and Plaintiff appealed. *Id.* at 426.

The Seventh Circuit upheld the circuit court's finding of summary judgment. *Id.* The Seventh Circuit noted that the probable cause inquiry was not dependent on whether the deputy was ***certain*** that Petersen was driving, but rather whether it was ***reasonable*** for her to believe he was driving. The court then concluded that based on the circumstantial evidence, it was reasonable for her to believe he was driving and therefore she had probable cause for the arrest. *Id.* at 427.

In this case, there is enough evidence to demonstrate that the Defendants had probable cause to arrest Plaintiff for a hit-and-run accident and other related charges. Based on the stipulated facts alone, Plaintiff admits that his vehicle was involved in a car accident on the night in question. He admits that the vehicle exhibited front side damage. He admits that the accident happened near the Kwik Trip. He admits that he was standing near the car and holding the keys when the Officers arrived. He admits that no one else was located near the car when the Officers arrived at the scene. He admits that he began yelling in the presence of the police officers. Coupled together, these facts constitute probable cause that Plaintiff may have been the individual responsible for the hit-and-run incident.

When accounting for the additional evidence produced in the "disputed" facts, the existence of probable cause becomes overwhelming. The police reports reveal that the officers arrived at the Kwik Trip after receiving ***two independent 911 calls***. One from the victim herself**,** reporting that a red minivan (just like Plaintiff's) had been driving erratically and committed a hit-and-run accident on I-94. (Proposed Finding of Fact, ¶¶2-3) (hereafter "PFOF"). Responding officers then located, right at the highway exit that the vehicle committing the hit-and run exited, a minivan not

only meeting the description (red or maroon), but exhibiting damage consistent with having just been in an accident.

Upon locating the minivan, Sgt. Fry observed Plaintiff standing right outside it and holding the keys. When he tried to speak with Plaintiff as part of the investigation, Sgt. Fry observed Plaintiff to exhibit signs of potential drug use: Plaintiff had glassy eyes, made statements about someone following him, and was slurring his words.(PFOF, ¶ 4). Sgt. Fry's observations were corroborated by Defendant Deputy Embrey and another responding officer, who similarly observed Plaintiff to be agitated, loud, expressive, and wide eyed, and spewing nonsensical statements. (PFOF, ¶ 6). Based on those additional facts, the Officers not only had probable cause to arrest Plaintiff for the hit-and-run, but also reasonably suspected Plaintiff had been operating while intoxicated.

It is anticipated Plaintiff will argue he told officers that *someone hit his car* and, regardless, he was not driving so, "How could [he] have been involved in a hit and run?" (PFOF, ¶ 7). He will argue he advised the Officers that some other vehicle, also in the Kwik Trip parking lot, struck his vehicle and the officers ignored him. (*See e.g.* Dkt. No. 50, Second Amended Summons and Complaint p. 24). Even if one assumed that these statements were objectively true,[1] they are irrelevant.

The officers were not obligated to determine Plaintiff's guilt or innocence in the moment. They were obliged to investigate distinct reports of a red minivan that had struck another vehicle on I-94 and exited at Highway 20. The vehicle that reported being struck was **pulled over** on I-94

---

[1] The notion that the officers were somehow unreasonable in suspecting Plaintiff had committed the crime of hit and run because the suspect of that hit and run said "nuh uh" it was someone else, "that guy hit me!" is absurd. They responded within minutes of the 911 calls reporting precisely that a red minivan causing a hit and run exited at Highway 20. Lo and behold, a red minivan, again within minutes of the calls, was discovered at a gas station just east of I-94 at Highway 20 exhibiting damage consistent with a hit and run. Frankly, it would be *unreasonable* to determine these officers *lacked* probable cause to arrest Plaintiff.

7

waiting for other officers to respond. The notion that two red minivans were involved in separate hit and runs in the proximity of Highway 20 off of I-94 at the same time is about as far-fetched as one could imagine. However, even if that were the case, the Defendant officers were not obliged to make that determination at that time. They were obliged to investigate and that investigation demonstrated articulable facts upon which a reasonable officer could have concluded Plaintiff had committed a crime.

Again, the Officers' only duty was to investigate the facts reported to them. Those facts indicated a red minivan was driving erratically on the interstate, hit another car and exited at Highway 20. The notion that pure coincidence would place Plaintiff at the Kwik Trip with a crashed up red minivan within minutes of the 911 call the officers were responding to and the Plaintiff was not involved in the hit and run is nonsensical. The officers that responded to the 911 call and arrested Plaintiff at the Kwik Trip had every reason to believe probable cause existed to do so. Plaintiff accordingly cannot prove the Officers lacked probable cause, and his malicious prosecution claim must be dismissed.

### B. The Trial Court Already Found Probable Cause, and Such Finding is Entitled to a Rebuttable Presumption.

The evidence of probable cause is strong enough in this case that the criminal trial court concluded probable cause existed. (PFOF, ¶ 8).. That determination is entitled to a rebuttable presumption of validity. In *Washington v. City of Chicago,* the Plaintiffs sued for malicious prosecution after they were tried and acquitted of murder charges, for which there had been probable cause to arrest them. *Washington v. City of Chicago,* 98 F.4th 860 (7th Cir. 2024). The Plaintiffs alleged there had not been probable cause and therefore brought a case for, among other allegations, state law malicious prosecution. *Id.* The Defendants moved for summary judgment, which was granted by the district court and affirmed by the Seventh Circuit. *Id.* at 868. In arriving

8

at its decision, the Seventh Circuit held that "judicial determination of probable cause [is] ordinarily entitled to a presumption of validity." *Washington v. City of Chicago,* 98 F.4th 860, 869 (7th Cir. 2024); *Lewis v. City of Chicago,* 914 F.3d 472, 477 (7th Cir. 2019). To overcome such a presumption, a plaintiff must be able to prove the following:

1) That the officer who arrested him "knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer," and
2) That the false statements were necessary to the judicial officer's determination that probable cause existed for the arrest.

*Washington,* 98 F.4th at 870. The Seventh Circuit concluded Plaintiffs could not overcome such a presumption, and independently, there was probable cause to arrest Plaintiffs even if they were ultimately acquitted, and therefore summary judgment had been appropriate. *Id. at* 878.

In the *Petersen* case, referenced above, the Seventh Circuit briefly noted that it was "doubtful" that the whether the criminal state court's ruling on a lack of probable cause would have a "preclusive" effect on the ensuing civil case. *Petersen,* 140 F.4th at 428. The *Petersen* Court did not heavily address the issue, quickly noting that such an issue was "irrelevant" to its decision. *Id.* Regardless, the facts in *Petersen* make the case distinguishable.

Here, like in *Washington,* in the underlying criminal case the court found there ***was*** probable cause. In Petersen the underlying court found there ***was not*** probable cause. So, while under *Petersen*, a finding of ***no*** probable cause may not have preclusive effect, according to *Washington*, a finding that there ***was*** probable cause creates a rebuttable presumption as outlined above.

During Plaintiff's criminal trial, the Racine County Circuit Court recognized that there was probable cause to arrest Plaintiff for a hit-and run and Operating While Intoxicated:

> The defendant's vehicle matched the description of the vehicle that was involved in the hit-and-run and the defendant admitted to being the operator of that vehicle. The deputies believed he was under the influence of something.

9

So, there was probable cause at least for the hit-and-run, likely for disorderly conduct, and there was suspicion of an OWI, although likely not an operating while under the influence of alcohol, but rather some other, some other substance.

***

But backing up here to see if the search was justified here with respect to probable cause to believe that the vehicle contained evidence of a crime, I think that it is a close call, but believe that the ***answer is yes, there was probable cause for this reason.***

As indicated, the deputies testified that the defendant had not only glassy eyes, but also large pupils, that he was acting erratically, that he may have been hallucinating in talking about how he was being chased, and he was exhibiting all of these, all of these criteria, also sweating, dilated pupils, all these criteria of some sort of a drug.

The argument of the case is that it was reasonable to believe that this automobile contained the drug and quite probably or at least possibly an illegal drug that he was on.

The deputy did talk about believing that it was a street drug or a hallucinogen, and I think that it is reasonable for these officers to believe that a search of the vehicle would yield the drug that the defendant was on. He had come up from Kenosha into Racine, and they were satisfied that he was on something.

I think that this is a difficult case, and I want to articulate this clearly in case another court reviews this decision, that it's not what I would term a sort of run-of-the mill OWI, if you will.

In an operating while intoxicated and people are – or a defendant is exhibiting behavior of alcohol intoxication, it may or may not be legitimate to search that vehicle because I suppose the argument could be, oh, we thought maybe we'd find a liquor bottle. That may or may not be convincing and likely not to the Court.

In this case, though it is different because it appears that he was under the influence of something. It was probably not alcohol because the officers didn't have the smell of alcohol . . .

I think the combination of those elements and the totality of those particular circumstances provided the probable cause to these deputies to search this car, including searching the glovebox where they found the drugs and the gun in a search for what they believed would be some evidence of a drug that – a drug of which the defendant was under the influence.

So while it is not as straightforward an analysis as some, I think that the totality of circumstances does yield the probable cause. And I'm satisfied from the testimony

> of these officers – or these deputies, rather, that probable cause did exist to search this automobile after arrest.

> ***

> Again, although it was a suspicion of OWI, they did have the hit-and run, and they were suspicious that whatever the defendant had taken contributed to the defendant's actions in the hit and run.

(PFOF, ¶ 8).

Thus, the criminal court clearly determined there was indubitable evidence to justify plaintiff's arrest. It was only with respect to an ensuing search (which found cocaine and a gun) where the court, for the reasons articulated, believed it was a close call. Even still, the court believed the subjective observations which the officers testified to during the November 2016 hearing supported the assertion that the search was lawful.

To rebut the presumption the criminal court's decision should stand, Plaintiff must prove Deputies Fry and Embrey knowingly or recklessly made false statements to the court. There is ZERO evidence to support that conclusion. Indeed, based on the stipulated facts, it is clear the opposite is true. According to the stipulated facts Plaintiff's vehicle was involved in a car accident on I-94. Plaintiff's vehicle, thereafter, exited at Highway 20 and went to the Kwik Trip. Officers discovered the minivan, with Plaintiff outside, at the Kwik Trip. Plaintiff admitted the vehicle was his.

Absent some bizarre and exceedingly unlikely scenario involving separate minivans and separate accidents that these officers knew about and ignored, Plaintiff can never prove the Deputies knowingly or recklessly made false statements to the criminal court relative to Plaintiff's circumstances.

**II.    PLAINTIFF'S STATE LAW MALICIOUS PROSECUTION CLAIM MUST BE DISMISSED BECAUSE THE OFFICERS HAD PROBABLE CAUSE TO ARREST HIM.**

Wisconsin courts have historically been skeptical of malicious prosecution claims as such claims bring forward a risk of frivolous litigation. See *Krieg v. Dayton-Hudson Corp.*, 104 Wis. 2d 455, 460, 311 N.W.2d 641 (1981). Due to such concerns, Wisconsin law requires the plaintiff to meet a "stringent burden" in which it must prove the following elements:

1) A judicial proceeding was brought against Plaintiff;
2) The proceeding was brought at the instance of the Defendant;
3) The proceeding was terminated in favor of Plaintiff;
4) Defendant acted with malice in instituting the proceedings.
 5) The proceeding was instituted without probable cause.
6) Plaintiff suffered damages as a result of the proceeding.

*Id.* at 460.

For the reasons stated above, Plaintiff cannot prove the proceedings were instituted without probable cause. This case is the exact kind of frivolous litigation of which Wisconsin courts are skeptical and should be treated accordingly. Since Plaintiff cannot prove the Defendants lacked probable cause, the state law malicious prosecution claims must also be dismissed.

**II.    PLAINTIFF'S *MONELL CLAIM* AGAISNT RACINE COUNTY MUST BE DISMISSED BECAUSE HE CANNOT PRODUCE EVIDENCE OF UNWRITTEN, WIDESPREAD UNCONSTITUTIONAL PRACTICES THAT VIOLATED HIS CIVIL RIGHTS.**

The court should grant Defendant's Motion because Plaintiff cannot prove the existence of a widespread custom or policy that violated his constitutional rights. To be successful under a *Monell* theory, a plaintiff must prove there was an (1) "official policy, widespread custom or action" (2) "by an official with policy-making authority [that] was the 'moving force' behind [the plaintiff's] constitutional injury." *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016) (quoting *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

In cases of unwritten polices, the plaintiff must prove the behavior was so "persistent and widespread that City policymakers should have known about the behavior." *Latuszkin v. City of Chicago,* 250 F.3d 502, 505 (7th Cir. 2001). As an additional requirement, Complaints concerning customs, widespread practices, or omissions in policies (as opposed to written or express policies) that allegedly caused a constitutional violation, require the establishment that "there is a true municipal policy at issue, not a random event" or an "isolated incident." *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). It "requires more evidence than a single incident to establish liability." *Id*.

Despite repeated efforts to extract from Plaintiff the focus of his *Monell* claim, the exact nature of the claim remains unclear.[2] To Defendants' best knowledge, according to his Complaint, Plaintiff alleges that there are unwritten, yet widespread practices within Racine County that violate individuals' constitutional rights as follows:

- "pursue suspects by any means necessary to obtain a conviction regardless of accuracy"
- Use of pretextual municipal citations, OWI forfeiture policies, practices of unlawful detainment per malicious prosecution
- Code of silence
- Failure to train
- Failure to investigate and substantiate allegations of unconstitutional and criminal misconduct
- Failure to discipline officers engaged in unconstitutional and criminal misconduct

(Dkt. No. 50).

Plaintiff has not produced any evidence to support these claims beyond his own assertions and citation to his own experience. He has been unable to produce any evidence which shows improper behavior on behalf of the Defendants in this case, let alone evidence to show a widespread violation of constitutional rights.

---

[2] Defendants have met with Plaintiff three times, hoping each time to get clarity on what the violated policy is. He has not been able to provide a clear theory of *Monell* liability.

Rather, the evidence produced in this case shows that Racine County has (1) written procedures in place that directly address how to act in potentially difficult situations; and (2) that the officers involved in this case have no disciplinary history of engaging in unconstitutional or criminal misconduct. Therefore, there can be no sincere debate about whether Racine County has a variety of practices that amount to a widespread unwritten practice that violates the civil rights of many. The evidence shows that this is indisputably not the case, and Plaintiff's *Monell* clam must be dismissed.

### IV. PLAINTIFF'S NEGLIGENT SUPERVISION CLAIM AGAISNT SHERIFF SCHMALING MUST BE DISMISSED BECAUSE THERE IS NO EVIDENCE SHERIFF SCHMALING COULD HAVE OR SHOULD HAVE KNOWN THAT DEPUTIES FRY AND EMBREY WERE VIOLENT.

This court last permitted Plaintiff to proceed on a claim of state law negligent supervision against Sheriff Schmaling. Plaintiff claims Sheriff Schmaling was negligent for allowing violent employees to operate within his department. Plaintiff alleges that Sheriff Schmaling should have known that his employees were violent and dispossessed to maliciously prosecute members of the public. To prove state law negligent supervision, Plaintiff must show:

1) A duty of care owed to the Plaintiff;
2) a breach of that duty;
3) wrongful act of omission of an employee that was a cause in fact of the plaintiff's injury;
4) an act or omission of the employer was a cause in fact of the wrongful act of the employee.

*Miller v. Wal-Mart Stores, Inc.,* 219 Wis. 2d 250, ¶ 26, 580 N.W.2d 233 (1998); *John Doe 1 v. Archdiocese of Milwaukee*, 2007 WI 95, 303 Wis. 2d 34, 734 N.W.2d 827. This requires both an affirmative wrong act by the employee and by the employer. *Fleming v. Amateur Athletic Union of United States, Inc.*, 2023 WI 40, ¶ 39, 407 Wis. 2d 273, 990 N.W.2d 244.

Plaintiff can prove only that there was a duty owed to him, much like there is always such a duty owed to every member of the public interacting with law enforcement. He cannot prove a breach of that duty because these officers were merely doing their jobs.

They did not commit a wrongful act that caused Plaintiff harm. They responded to 911 calls about a hit and run. They found the vehicle involved in that hit and run and Plaintiff in proximity to that vehicle. That vehicle matched the reported description, had been in a recent accident and Plaintiff admitted it was his. He also exhibited signs of intoxication. He was arrested. To hear Plaintiff tell it, the officers singled him out for no reason at all.

In addition, neither Sgt. Fry nor Deputy Embrey have prior instances of violent behavior. Their only prior disciplinary instances were related to administrative errors. Not only do all Defendants wholeheartedly deny any violent tendencies, but there certainly was no reason for Sheriff Schmaling to believe any of the officers acted violently short of a disciplinary record to the contrary. Indeed, all these officers did was respond to reports that a red minivan had been involved in a hit and run. They discovered that very red minivan and its owner (Plaintiff). When trying to question him, he acted erratically and appeared under the influence of drugs. Officers later searched Plaintiff's vehicle and found cocaine. Said differently, the Deputies investigated a reported crime, identified the likely criminal and arrested him. That was/is their job. Thus, Plaintiff cannot prove a breach of duty, wrongful act or omission, or that there was any personal action on Sheriff Schmaling's behalf that led to a wrongful act. This claim must therefore also be dismissed.

## CONCLUSION

**WHEREFORE**, based on the foregoing, Defendants respectfully request that this Honorable Court grant their motion for Summary Judgment and dismiss Plaintiff's claims in their entirety, on the merits and with prejudice together with costs, disbursements, and any other relief it deems just.

Dated this 29th day of September 2025.

                                      **MEISSNER TIERNEY FISHER & NICHOLS, S.C.**

By:   *Electronically signed by Jacob A. Sosnay*
       Jacob A. Sosnay
       State Bar No. 1063964
       jas@mtfn.com
       Alyssa Chojnacki Beckham
       State Bar No. 1124669
       acb@mtfn.com
       **Attorneys for Defendants Jon Fry, William Embrey, Racine County and Sheriff Christopher Schmaling**

**Mailing Address**
111 East Kilbourn Avenue, 19th Floor
Milwaukee, WI 53202-6622
Phone: (414) 273-1300
Facsimile: (414) 273-5840